**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*<br>SANDRA WAGNER,<br><br>    Plaintiff,<br><br>v.<br><br>CARE PLUS HOME HEALTH CARE, INC.;<br>PRASAD ITTY; and<br>KUMAR GOVIND,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 15-CV-260-GKF-JFJ<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Before the court is the Motion to Dismiss for Failure to State a Claim [Doc. #39] of defendants Care Plus Home Health Care, Inc., Prasad Itty, and Kumar Govind (collectively, "defendants"). For the reasons set forth herein, the motion is granted in part and denied in part.

## I. Factual Background

Defendant Care Plus Home Health Care, Inc. is a certified home health agency purportedly owned and operated by individual defendants Prasad Itty and Kumar Govind. Plaintiff Sandra Wagner was formerly employed by Care Plus, first as an independent contractor registered nurse from May 2006 to January 2013, and then as the Office Director of Nursing from January 2013 until her termination in February 2015.

While employed as the Office Director of Nursing, Wagner alleges that she "determined that Defendants' business practices were designed to fraudulently maximize billing, primarily to Medicare." [Doc. #2, ¶ 28]. Specifically, Wagner asserts that she witnessed two types of

fraudulent conduct by defendants: (1) continuing to provide services to patients who were not eligible for home health services under the Medicare guidelines, and billing Medicare for such unnecessary and/or ineligible services; and (2) falsifying required documentation and medical records to increase Medicare billings and avoid reimbursement of Medicare overpayments. Wagner estimates that defendants' alleged scheme has been ongoing since 2010, and resulted in losses to the United States in the amount of approximately $1,490,000 per year. [Doc. #2, ¶ 133].

Wagner initiated this *qui tam* action against defendants on behalf of the United States pursuant to False Claims Act, 31 U.S.C. §§ 3729 *et seq.*[1] The Complaint asserts three causes of action: (1) presentation of false claims in violation of 31 U.S.C. § 3729(a)(1)(A); (2) making or using a false record or statement to cause a false or fraudulent claim to be paid in violation of 31 U.S.C. § 3729(a)(1)(B); and (3) making or using a false record or statement to avoid an obligation to pay (refund) money to the government in violation of 31 U.S.C. § 3729(a)(1)(G). *See* [Doc. #2].

Defendants move to dismiss count I pursuant to Fed. R. Civ. P. 12(b)(6) and all counts pursuant to Fed. R. Civ. P. 9(b). *See generally* [Doc. #39].

## II.      Standard for Motion to Dismiss

### A.      *Fed. R. Civ. P. 12(b)(6)*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain

---

[1] The False Claims Act permits a private person, called the "relator," to bring a civil action for alleged fraud on the U.S. government. 31 U.S.C. § 3730(b). *See also U.S. v. Eisenstein*, 556 U.S. 928, 932 (2009). In a *qui tam* action, the government may elect to intervene and proceed with the action within 60 days, but, if the government declines to take over the action, the relator shall have the right to conduct the action. 31 U.S.C. § 3730(b)(2) and 3730(b)(4)(B). On May 18, 2017, the government notified the court that it was not intervening at that time [Doc. #23], and, therefore, Wagner retains the right to conduct this litigation.

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotations omitted). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

   B.    *Fed. R. Civ. P. 9(b)*

In addition to Fed. R. Civ. P. 12(b)(6), because liability under the False Claims Act requires a false or fraudulent claim, the requirements of Fed. R. Civ. P. 9(b) must also be satisfied. *See U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006). Pursuant to Fed. R. Civ. P. 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

The parties disagree as to the level of particularity required by Fed. R. Civ. P. 9(b) relative to claims under the False Claims Act. Citing *Sikkenga*, defendants argue that Wagner's first two causes of action—presentation of false claims in violation of 31 U.S.C. § 3729(a)(1)(A) and making or using a false record or statement to cause a false or fraudulent claim to be paid in violation of 31 U.S.C. § 3729(a)(1)(B)—require identification of specific false claims actually submitted to the government. [Doc. #39, pp. 9-10; Doc. #44, pp. 1-3]. In opposition, Wagner cites

a more recent Tenth Circuit decision, *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163 (10th Cir. 2010), for the proposition that billing details are not always necessary to satisfy Fed. R. Civ. P. 9(b), as the Rule requires only that FCA claimants allege "the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." [Doc. #42, p. 5 (emphasis omitted) (quoting *Lemmon*, 614 F.3d at 1172)]. Thus, it is necessary for the court to examine the Tenth Circuit's discussion of Rule 9(b) in both *Sikkenga* and *Lemmon*.

In *Sikkenga*, the court considered whether a relator had adequately pled a FCA cause of action alleging that the Medicare carrier for the State of Utah obtained unmerited renewals of its contract with Medicare by fraudulently manipulating its Contractor Performance Evaluation Program scores, resulting in every claim made for administrative costs under the contracts being fraudulent. *Sikkenga*, 472 F.3d at 707. The district court dismissed the FCA claim on the basis that the relator "failed to identify particular claims that were allegedly false under Federal Rule of Civil Procedure 9(b)," and the relator appealed. *Id.* at 726.

In reviewing the district court's dismissal of the FCA cause of action, the Tenth Circuit first noted that "[Fed. R. Civ. P. 9(b)'s] heightened pleading requirements apply to actions under the FCA," and generally stated of the rule's heightened requirements: "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *Id.* at 726-27 (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Thus, to satisfy the general pleading requirements of Rule 9(b), a pleading must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* at 727 (quoting *Koch v. Koch Indus.,* 203 F.3d 1202, 1236 (10th Cir. 2000)).

Specific to claims under the False Claims Act, the Tenth Circuit articulated the Rule 9(b)

pleading requirement as follows:

> "Underlying schemes and other wrongful activities that result in the submission of
> fraudulent claims are included in the 'circumstances constituting fraud and mistake'
> that must be pled with particularity under Rule 9(b)." *United States ex rel. Karvelas
> v. Melrose-Wakefield Hosp*., 360 F.3d 220, 232 (1st Cir. 2004). However, unless
> such pleadings are "linked to allegations, stated with particularity, of the actual
> false claims submitted to the government," *id.*, they do not meet the particularity
> requirements of Rule 9(b). We agree with our sibling circuit, that:
>
>> Rule 9(b)'s directive that 'the circumstances constituting fraud and mistake
>> shall be stated with particularity' does not permit a False Claims Act
>> plaintiff merely to describe a private scheme in detail but then to allege
>> simply and without any stated reason for his belief that claims requesting
>> illegal payment must have been submitted, were likely submitted or should
>> have been submitted to the Government. *United States ex rel. Clausen v.
>> Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002).

*Id.* at 727 (alteration to citations). Thus, in *Sikkenga*, the Tenth Circuit concluded:

> We conclude that [relator's] complaint falls woefully short of adequately pleading
> that false or fraudulent claims were submitted by [defendant]. As stated by the First
> Circuit, to satisfy Rule 9(b)'s requirements:
>
>> [A] relator must provide details that identify particular false claims for
>> payment that were submitted to the government. In a case such as this,
>> details concerning the dates of the claims, the content of the forms or the
>> bills submitted, their identification numbers, the amount of money charged
>> to the government, the particular goods and services for which the
>> government was billed, the individuals involved in the billing, and the
>> length of time between the alleged fraudulent practices and the submission
>> of claims based on those practices are the types of information that may help
>> a relator to state his or her claims with particularity. These details do not
>> constitute a checklist of mandatory requirements that must be satisfied for
>> each allegation included in a complaint. However, like the Eleventh Circuit,
>> we believe that "some of this information, for at least some of the claims
>> must be pleaded in order to satisfy Rule 9(b)."

*Id.* at 727-28 (alteration in original) (quoting *Karvelas,* 360 F.3d at 232-33 (footnotes omitted)).

In *Lemmon*, the Tenth Circuit again reviewed a district court's dismissal of False Claims

Act causes of action on the basis that the relator "failed to '[t]ie those allegations to an identifiable,

plausible 'false claim' within the meaning of the False Claims Act." *Lemmon*, 614 F.3d at 1167 (alteration in original). To determine whether the relator's complaint satisfied Rule 9(b), the court applied the following standard:

> Rule 9(b) supplements 8(a) in setting forth the pleading requirements under the FCA. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Our pre-*Twombly* cases required plaintiffs pursuing claims under the FCA to plead the "who, what, when, where and how of the alleged [claim]." *Sikkenga,* 472 F.3d at 727. This language has been read to require plaintiffs to identify the time, place, content, and consequences of the fraudulent conduct. *See, e.g., Koch*, 203 F.3d at 1236 (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)). Though *Twombly* and *Iqbal* clarified 9(b)'s requirements, the Rule's purpose remains unaltered. Namely, "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . ." *Id.* (quoting *Farlow v. Peat, Marwick, Mitchell & Co*., 956 F.2d 982, 987 (10th Cir. 1992)); *see also* 5A Wright & Miller § 1298 (collecting cases in support of the proposition that "the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) . . . is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading."). **Thus, claims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme.** *See, e.g., United States ex rel. Duxbury v. Ortho Biotech Prods.,* 579 F.3d 13, 29 (1st Cir. 2009); *United States ex rel. Lusby v. Rolls-Royce Corp*., 470 F.3d 849, 854-55 (7th Cir. 2009); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).

*Lemmon,* 614 F.3d at 1171-1172 (alterations in original) (emphasis added).

The court is not blind to the apparent tension observed by some between *Sikkenga* and *Lemmon*. *See U.S. ex rel. Polukoff v. St. Mark's Hosp.*, No. 16-cv-00304-JNP-EFJ, 2017 WL 237615, at *5 (D. Utah Jan. 19, 2017) ("The standard adopted in *Lemmon* is not compatible with some of the language found in *Sikkenga*. . . . Thus, *Lemmon* tacitly overruled language from *Sikkenga* requiring specific allegations regarding the bills submitted to the government."); Brief for the United States as Amicus Curiae at 10 and 14, U.S. ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc., 134 S. Ct. 1759 (2014) (No. 12-1349), 2014 WL 709660 (although

recognizing dispute was not "clearly defined," noting "[t]here is, however, at least some continuing uncertainty as to whether a *qui tam* complaint satisfies Rule 9(b) if it contains detailed allegations giving rise to a reasonable inference that false claims were submitted to the government, but does not identify specific requests for payment").

However, the court is persuaded by decisions adopting a more nuanced approach. *See U.S. ex rel. Chorches v. Am. Med. Response*, 865 F.3d 71 (2d Cir. 2017); *U.S. ex rel. Prather v. Brookdale Senior Living Cmtys. Inc*., 838 F.3d 750 (6th Cir. 2016). In *Prather*, citing *Sikkegna*, the Sixth Circuit counted the Tenth Circuit among those circuit courts applying a "heightened pleading standard" to FCA claims which generally required allegations of the actual submission of a specific request for payment to the government. *Prather*, 838 F.3d at 768-69 and 772. The Sixth Circuit cited *Lemmon*, however, as evidence of the Tenth Circuit's "retreat[] from such a requirement in cases in which other detailed factual allegations support a strong inference that claims were submitted." *Prather*, 838 F.3d at 772-73.

This court joins those courts declining to interpret *Sikkenga* as adopting a bright line rule, and recognizing that, although allegations of the actual submission of a specific request for payment to the government is necessary in most FCA claims, adherence to this rigid pleading standard may not be necessary where the allegations of the relator's (or government's) complaint demonstrate the "specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *Lemmon*, 614 F.3d at 1172.

## III. Overview of the False Claims Act

"The FCA 'covers all fraudulent attempts to cause the government to pay out sums of money.'" *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc*., 543 F.3d 1211, 1217 (10th Cir.

2008) (quoting *United States ex rel. Boothe v. Sun Healthcare Grp., Inc*., 496 F.3d 1169, 1172

(10th Cir. 2007) (quotation omitted in original)).  The relevant sections of the FCA are as follows:

> (a)  Liability for certain acts –
>
>> (1)  In general. – Subject to paragraph (2), any person who –
>>
>>> (A)  knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>>>
>>> (B)  knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>>>
>>> ***
>>>
>>> (G)  knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,
>>>
>>> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1)(A), (B), (G) (internal footnote omitted).

> A.  *31 U.S.C. § 3729(a)(1)(A) Claims*

Section 3729(a)(1)(A) imposes liability on persons who knowingly present, or cause to be

presented, a false or fraudulent claim for payment to the government.  31 U.S.C. § 3729(a)(1)(A).

"In order to establish a violation of § 3729(a)(1), 'a plaintiff must show by a preponderance of the

evidence that: (1) a false or fraudulent claim (2) is presented to the United States for payment or

approval (3) with knowledge that the claim is false or fraudulent.'"  *U.S. ex rel. Troxler v. Warren*

*Clinic, Inc.,* No. 11-CV-808-TCK-FHM, 2014 WL 5704884, at *2 (N.D. Okla. Nov. 5, 2014)

(quoting *U.S. ex rel. Trim v. McKean*, 31 F. Supp. 2d 1308, 1315 (W.D. Okla. 1998)).

Two types of FCA claims exist—factually false claims and legally false claims. *See Conner*, 543 F.3d at 1217. "Factually false claims" generally require proof "the government payee has submitted 'an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'" *Id.* (quoting *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001)). "'Claims arising from legally false requests, on the other hand, generally require knowingly false certification of compliance with a regulation or contractual provision as a condition of payment.'" *U.S. ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1168 (10th Cir. 2016) (quoting *Lemmon*, 614 F.3d at 1168).

The Tenth Circuit has recognized two forms of legally false claims under section 3729(a)(1)(a)—express false certification and implied false certification. *Shaw v. AAA Eng'g & Drafting, Inc*., 213 F.3d 519, 531-32 (10th Cir. 2000). "Claims under an express-false-certification theory arise when a payee 'falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment.'" *Lemmon,* 614 F.3d at 1168 (quoting *Conner*, 543 F.3d at 1217). "The payee's 'certification' need not be a literal certification, but can be any false statement that relates to a claim." *Id. See also Conner*, 543 F.3d at 1217 (opining that certifications may be made through "invoices or other express means").

In contrast, an implied false certification claim does not require a false representation, but may result from a material omission—specifically, that the payee failed to comply with a material statutory, regulatory or contractual requirement. *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1995 (2016). Under an implied false certification theory, "liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance

with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach if the omission renders those representations misleading." *Id.*

B.      *31 U.S.C. § 3729(a)(1)(B) Claims*

Section 3729(a)(1)(B) prohibits the use of a false record or statement in order to demonstrate to the government that a false or fraudulent claim should be paid. 31 U.S.C. § 3729(a)(1)(B); *Troxler*, 2014 WL 5704884, at *2. Liability under section 3729(a)(1)(B) requires proof of the following: "'(1) a false record or statement (2) is used to cause the United States to pay or approve a fraudulent claim (3) with the defendant's knowledge of the falsity of the record or statement.'" *Troxler*, 2014 WL 5704884, at *2 (quoting *Trim*, 31 F. Supp. 2d at 1315). In contrast to 31 U.S.C. § 3729(a)(1)(A), only factually false claims and express false certification clams are actionable under 31 U.S.C. § 3729(a)(1)(B). *See Shaw*, 213 F.3d at 531-32.[2] Due to the false record or statement requirement, an implied false certification claim does not exist under 31 U.S.C. § 3729(a)(1)(B). *Id. See also Lemmon*, 614 F.3d at 1168.

C.      *31 U.S.C. § 3729(a)(1)(G) Claims*

Section 3729(a)(1)(G) is commonly referred to as the "reverse false claims" provision, and prohibits "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G); *U.S. ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1194 (10th Cir. 2006). "A reverse false claim is documentation resulting in an underpayment to the Government, as opposed to a false claim, generally referring

---

[2] Both *Lemmon* and *Shaw* analyzed § 3729(a)(2), which was renumbered to § 3729(a)(1)(B) by passage of the Fraud Enforcement and Recovery Act of 2009, Pub.L. No. 111-21, § 4, 123 Stat. 1616 (2009).

to an inflated or false bill for payment from the Government." *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1041 n.2 (10th Cir. 2004). Section 3729(a)(1)(G) "was added 'to provide that an individual who makes a material misrepresentation to avoid paying money owed the Government would be equally liable under the Act as if he had submitted a false claim to receive money.'" *Bahrani*, 465 F.3d at 1194 (quoting S. Rep. No. 99-345, at 18, U.S.C.C.A.N. at 5283).

"To prove a 'reverse false claim' under FCA section 3729(a)(1)(G) a relator must show that: (1) the defendant knowingly made a materially false record or statement; (2) to improperly avoid or decrease an obligation to pay or transmit money or property to the government." *U.S. ex rel. Duffy v. Lawrence Mem'l Hosp.*, No. 14-2256-SAC-TJJ, 2017 WL 2905406, at *5 (D. Kan. July 7, 2017). *See also Little v. ENI Petroleum Co., Inc.*, No. CIV-06-120-M, 2009 WL 2424215, at *2 (W.D. Okla. July 31, 2009) ("[I]n order to establish defendants' liability for the alleged reverse false claims, [relator] must show that (1) defendants made or used statements in order to avoid or decrease their obligation to pay money to the government; (2) the statements were false or fraudulent; and (3) defendants knew the statements were false or fraudulent.").

## IV.  Analysis of Wagner's Complaint

Wagner's Complaint asserts three causes of action based on the previously mentioned two broad categories of alleged fraudulent conduct by defendants:  (1) continuing to provide services to patients who were not eligible for home health services under the Medicare guidelines, and billing Medicare for such unnecessary and/or ineligible services; and (2) falsifying required documentation and medical records to increase Medicare billings and avoid reimbursement of Medicare overpayments. *See* [Doc. #2].  Defendants move to dismiss all causes of action and allegations on the basis of failure to satisfy Rule 9(b)'s pleading requirements. *See generally* [Doc. #39].

In considering the allegations, the court notes that the allegations related to the alleged provision of home health services to ineligible Medicare patients appear to be wholly independent from the allegations that defendants falsified documentation and medical records to increase Medicare billings and avoid reimbursement of Medicare overpayments. For each course of conduct, the Complaint provides exemplary sample patients. The Complaint does not allege any duplicative exemplar patients. That is, no patient cited as an example of an ineligible home health care patient is also cited as an example of a case wherein defendants allegedly falsified documentation or medical records. Thus, the court will separately consider the causes of action with respect to each course of conduct.

### A. *Ineligible Patients Being Brought on and Kept on Home Health Services [Doc. #2, pp. 8-17 ¶¶ 41-76]*

Although not clearly identified as such, Wagner's allegations that defendants continued to provide services to patients who were not eligible for home health services under the Medicare guidelines in an effort to increase Medicare billing are predicated upon legally false, rather than factually false, claims. These allegations do not assert that defendants billed for services that were not actually provided.

With respect to allegations premised on implied false certification theory, the court will consider only if the allegations state a plausible claim under 31 U.S.C. § 3729(a)(1)(A). However, the court will analyze whether the allegations premised on express false certification theory state a plausible claim under § 3729(a)(1)(A), § 3729(a)(1)(B), or § 3729(a)(1)(G).

### 1. Implied False Certification

The majority of Wagner's allegations and corresponding patient examples are premised on the implied legal certification theory. *Compare* [Doc. #2, ¶ 151 ("Various claims forms, including the Health Insurance Claim Form, require the provider certify that the medical care or service

rendered was medically 'required,' medically indicated and necessary, and that the provider is in compliance with all applicable Medicare laws and regulations.  42 U.S.C. § 1395n(a)(2); 42 U.S.C. § 1320c-5(a); 42 C.F.R. §§ 411.400, 411.406.") *with* Doc. #2, ¶ 41 ("A majority of Defendants' patients were not eligible for home health care service but were brought on and kept on service in a fraudulent scheme to facilitate billing to Medicare for the profit of Defendants.")].  Thus, the court need only consider whether these allegations satisfy Rule 9(b)'s requirements to state a plausible claim under 31 U.S.C. § 3729(a)(1)(A).  *See Shaw*, 213 F.3d at 531 (only factually false claims and express legally false certification claims are actionable under 31 U.S.C. § 3729(a)(1)(B)).[3]

The Complaint's allegations that ineligible patients were brought on and kept on defendants' home health service in violation of 31 U.S.C. § 3729(a)(1)(A) do not satisfy the pleading requirements of Fed. R. Civ. P. 9(b) for implied false certification claims.

As discussed above, while this court recognized that, pursuant to *Lemmon*, allegations of the actual submission of a specific request for payment to the government may not be necessary in all FCA claims, *Lemmon* did not alter Rule 9(b)'s requirement that a claimant "demonstrate the specifics of a fraudulent scheme," *Lemmon*, 614 F.3d at 1172—that is, to "'set forth the 'who, what, when, where and how' of the alleged fraud.'" *Sikkenga*, 472 F.3d at 727 (quoting *Thompson*, 125 F.3d at 903).

With regard to "who," Wagner includes eleven (11) patient examples in the Complaint. However, the Complaint includes only broad allegations as to "when."  Noticeably absent from the Complaint is any allegation as to specific dates of service, dates of billing for those services,

---

[3] Although not addressed by *Shaw*, because a reverse false claims cause of action also requires proof that the defendant knowingly made a material false record or statement, an implied certification claim also cannot exist under 31 U.S.C. § 3729(a)(1)(G).  *Id.*; *Little,* 2009 WL 2424215, at *2.

or dates of payment. Rather, the Complaint includes only broad time periods in which the exemplary patients were on defendants' home health service. In one instance, service to the patient dates back to 2007. [Doc. #2, ¶¶ 44-45 (Medicare Patient ID 440403341B6)]. The shortest period of service alleged is approximately eleven months. [Doc. #2, ¶ 66 (Medicare Patient ID H55489859)]. Whether eleven months or seven years, the time periods alleged in the Complaint are too broad to afford defendants fair notice of when the claim arose.

Further, as to "what" and "how," the Complaint is devoid of any detailed allegations identifying the home health services actually provided for which patients were allegedly ineligible. The detailed factual allegations in the Complaint are primarily directed to establishing that the patients were not eligible for home health services. For the majority of the patient examples, the Complaint asserts only that the patients received weekly home visits for which they were not eligible. *See, e.g.,* [Doc. #2, ¶¶ 44-45, 46, 48, 54-55, 63-64, 66, 72, 73, 75]. The court is not bound to accept the Complaint's conclusory allegations that defendants have billed Medicare for unnecessary services. *See Twombly*, 550 U.S. at 555 ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Iqbal,* 556 U.S at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

The Complaint documents the services actually provided to only three of these patients— Medicare Patient ID 447188496D received routine medication instruction; Medicare Patient ID H42195960 had her prefill medication planner filled and received instruction as to prescriptions and chronic care; and Medicare patient ID 448409217A had her prefill medication planner filled by a licensed practical nurse. [Doc. #2, ¶¶ 51, 58, 61]. However, even as to these patients, the Complaint includes no allegations as to the dates of those services, the amount of the bills

submitted for these services, the identification numbers of those bills, or the individuals involved in providing the service. Without these details, even taking the remaining allegations of the Complaint as true, the allegations of the Complaint are inadequate for a reasonable inference that false claims *were submitted* as part of a fraudulent scheme. That is, the Complaint may contain sufficient allegations to infer that the patients were not entitled to home health services; however, the Complaint contains no allegations from which the court can infer that claims were actually submitted to the government for those services.

### 2. Express False Certification

Analyzing whether Wagner's factual allegations that ineligible patients were brought, and retained, on defendants' home health care service assert a FCA claim premised on express false certification, the court concludes that the allegations are insufficient to state a plausible FCA claim under § 3729(a)(1)(A), § 3729(a)(1)(B), or § 3729(a)(1)(G).

An express false certification claim requires an averment of a false or fraudulent statement related to a claim for payment to the government (or, in a reverse fraud claim, to avoid payment to the government). *See Lemmon,* 614 F.3d at 1168; *Little,* 2009 WL 2424215, at *2. Wagner alleges that defendants "knowingly made or used false records or statements material to a false or fraudulent claim or to get a false or fraudulent claim paid or approved by the United States, to wit: . . . false certifications regarding past, present, or future compliance with a prerequisite for payment or reimbursement by the United States through Medicare or Medicaid," [Doc. #2, ¶ 167(d)], and that these "false certifications, CMS forms, medical records, and other representations made or caused to be made by Defendants . . . knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government." [Doc. #2, ¶

171].  This formulaic recitation of false statements does not satisfy the *Twombly* standard, much less Rule 9(b).  *See Twombly*, 550 U.S. at 555.

Nor do Wagner's exemplar patients provide sufficient factual support.  Of the eleven (11) patient examples included in the Complaint, only two of the examples allege that a document or record submitted to the government included a false statement.  *See* [Doc. #2, ¶ 68 ("Relator knows that this patient's Form CMS-485 Plan of Care was false wherein it states 'Homebound Status: Confusion, unsafe to go out of home alone, requires max assistance/taxing effort to leave home.'"); *Id.,* ¶ 76 ("The information contained in the Form CMS-485 Plan of Care that states '[r]equires max assistance/taxing effort to leave home, residual weakness, unable to safely leave home unassisted, need assistance for all activities' is false and only included to make it appear as if the patient is in fact homebound when he is not.")].  However, the Complaint includes no allegations as to the date of the two Form CMS-485 Plans of Care that allegedly included false statements.  Nor does the Complaint identify the individual allegedly responsible for authoring the false statements or the means used by that person.  Without these details, the Complaint is missing critical information to the "who," "when," and "how" of the fraud, and cannot be construed to provide sufficient notice to defendants of the claims against them as required by Rule 9.

Wagner's claims for express false certification are further undercut by the remaining patient examples, which belie any indicia of falsity.  No less than two examples specifically allege that a physician provided an order for home health service.  *See* [Doc. #2, ¶ 44; ¶ 71], and many of the other examples assert only that the patients left their home to receive medical treatment— an activity which certainly does not disqualify the patients from being confined to the home under the statute.  *See* [Doc. #2, ¶ 46; ¶ 54; ¶ 66].  *See also* 42 U.S.C. § 1395f(a)(7) ("Any absence of an individual from the home attributable to the need to receive health care treatment, including regular

absences for the purpose of participating in therapeutic, psychosocial, or medical treatment in an adult day-care program that is licensed or certified by a State, or accredited, to furnish adult day-care services in the State shall not disqualify an individual from being considered to be 'confined to his home'."). Thus, the allegations of FCA express false certification claims premised on the retention of ineligible patients on defendants' service do not plead fraud with particularity as required by Rule 9(b), and do not state a plausible claim under § 3729(a)(1)(A), § 372(a)(1)(B), or § 3729(a)(1)(G).[4]

B. *Defendants Falsify OASIS Information and Medical Records*
   *[Doc. #2, pp. 17-27 ¶¶ 77-124]*

Unlike Wagner's allegations with respect to the retention by defendants of ineligible patients, the Complaint's allegations that defendants falsified OASIS information and medical records are predicated upon factual falsity, as well as legal falsity. Thus, this court will separately analyze the allegations under Fed. R. Civ. P. 9(b) with respect to both factual and legal falsity, beginning with factual falsity, pursuant to § 3729(a)(1)(A), § 3729(a)(1)(B), and § 3729(a)(1)(G).

   1. Factual Falsity

A claim is factually false when a government payee submits an incorrect description of goods or services provided or a request for reimbursement for goods or services that were never provided. *See Conner*, 543 F.3d at 1217. Of the eight patient examples provided by Wagner, four of the examples assert factually false claims—Medicare Patient ID 548768856A (claim for wound care that was not provided); Medicare Patient ID CPHC1018 (same); Medicare Patient ID

---

[4] Because the court concludes that the allegations that defendants continued to provide services to patients who were not eligible for home health services under the Medicare guidelines, and billed Medicare for such unnecessary and/or ineligible services do not satisfy Fed. R. Civ. P. 9(b), the court will not consider defendants' motion to dismiss Wagner's claims under § 3729(a)(1)(A) pursuant to Fed. R. Civ. P. 12(b)(6). *See* [Doc. #39, pp. 10-13].

444848563A (claim for a visit that was not actually completed); Medicare Patient ID 565561500A (same). [Doc. #2, ¶¶ 95-100; ¶ 117; ¶ 118; ¶¶ 120-24].

To survive defendants' motion to dismiss, Wagner's allegations must "demonstrate the specifics of a fraudulent scheme," *Lemmon*, 614 F.3d at 1172—that is, to "'set forth the 'who, what, when, where and how' of the alleged fraud.'" *Sikkenga*, 472 F.3d at 727 (quoting *Thompson*, 125 F.3d at 903).

With regard to the "who," three of the four patient examples identify Wagner as the author of the fraudulent statements and submissions. [Doc. #2, ¶¶ 98-100, 117, 119]. As to "when," although the exact dates on which the claims were allegedly submitted were not asserted, the Complaint includes allegations as to the dates of visits, skilled observation reports, supervision forms, and ADRs received. [Doc. #2, ¶¶ 98-100, 117, 119]. Based on these allegations, the court may infer that the claims were submitted during a four-month period—July 2014 to October 2014—which is a sufficiently narrow timeframe to satisfy Rule 9(b). Details as to the "how" are provided through the Complaint's allegations of the specific changes made to the documents submitted to the government, including altering records to reflect that wound care was performed when the original record reflected the patient's request that the bandage not be changed and falsifying records to make it appear as though home visits had been completed that had not been completed. [Doc. #2, ¶¶ 98-100, 117, 119]. As to the "what" and "why," the Complaint makes it clear—submission of false claims and records in order to "bill Medicare for more and higher paying services." *See* [Doc. #2, ¶ 82].

The court is persuaded that these allegations permit a reasonable inference that false claims were submitted as part of a fraudulent scheme *Lemmon*, 614 F.3d at 1172. Thus, the Complaint satisfies the requirements of Rule 9(b) with respect to the claim for presentation of false claims in

violation of § 3729(a)(1)(A) predicated upon factual falsity.  Based on these same allegations, the court concludes that the Complaint includes sufficiently detailed averments as to the alleged false statements or records to adequately plead a violation of § 3729(a)(1)(B) predicated upon factual falsity.[5]

With respect to the reverse false claim in violation of § 3729(a)(1)(G) cause of action, the section imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(1)(G). "Obligation" is defined as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment."  *Id.* at § 3729(b)(3).

The Complaint alleges that overpayments by the government are subject to recoupment. [Doc. #2, ¶¶ 153-156], which is borne out by statute.  *See* 42 U.S.C. § 1320a-7k (imposing an obligation to return overpayments to the government within 60 days and providing that overpayments retained over 60 days are "obligations" for purposes § 3729).  The Complaint further alleges that, in response to government audits, "[d]efendants have knowingly made, used, or caused to be made or used, false records or statements – i.e., false 'OASIS' patient care assessments, false claims for therapy services, false certifications regarding past, present, or future compliance with a prerequisite for payment or reimbursement by the United States through

---

[5] Defendants move to dismiss these allegations pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the allegations are vague and conclusory.  *See* [Doc. #39, pp. 13-14, 16-17].  However, the court is persuaded that the § 3729(a)(1)(A) and § 3729(a)(1)(B) claims premised on the submission of factually false claims also satisfy the pleading requirements of Fed. R. Civ. P. 12(b)(6).

Medicare or Tricare." [Doc. #2, ¶ 170]. Specifically, Wagner alleges that the false statements and falsification of records were in response to additional documentation requests received from Medicare. *See* [Doc. #2, ¶¶ 95-96, 98, 100, 118]. The court has already concluded that the exemplar patients and factual averments related to these false statements sufficiently detail the specifics of the fraudulent scheme pursuant to Rule 9(b). *Lemmon*, 614 F.3d at 1172. Thus, the Complaint states a plausible reverse false claims in violation of § 3729(a)(1)(G) cause of action based on allegations of factual falsity.

## 2. Legal Falsity – Express False Certification

Although not specifically pled as such, the remaining four patient examples are premised on express false certification claims.[6] Specifically, Wagner alleges that defendants falsified patient records and documents submitted to the government in order to receive payment for ineligible services. *See* [Doc. #2, ¶¶ 105, 108-110, 114-116, 119].

Construing the allegations of the Complaint as a whole, the court concludes that the Complaint sufficiently states a claim for violation of § 3729(a)(1)(A) and § 3729(a)(1)(B) predicated on allegations that defendants falsified medical records and OASIS documentation. Wagner again alleges that she and Govind, the "who," were responsible for creating the falsified documents. *See* [Doc. #2, ¶¶ 103, 105, 109-110, 114-116, 119]. Although the Complaint includes no allegations as to the dates that the *bills* were submitted for payment, the Complaint includes recitations of dates of care and dates on which the falsified records were created and submitted which sufficiently narrow the relevant timeframe. *See* [Doc. #2, ¶¶ 105, 108, 110, 114, 116, 119]. With respect to "what," the Complaint includes factual details as to the alleged falsifications,

---

[6] Upon review, the court finds no allegations supporting an implied false certification claim based on falsification of OASIS information and medical records as the entirety of the allegations assert an express legal or factual falsity.

including that Wagner backdated reports and falsified records to make it appear as though the exemplar patients were suffering from an exacerbation of symptoms.[7] [*Id.*] Finally, with regard to "how," Wagner explains the manipulation was accomplished through accessing the company's electronic computer systems, making alterations in the "K-mail" system, and cutting out a physician's signature for use on a blank Form CMS-485. [Doc. #2, ¶¶ 110-111, 83]. Based on these allegations, the court may infer that false claims and records were submitted in order to obtain payment, and, therefore, the requirements of Rule 9(b) are satisfied. Because the court is persuaded that the requirements of Fed. R. Civ. P. 12(b)(6) are also satisfied with respect to these allegations, the court concludes that the Complaint adequately states a claim for violation of § 3729(a)(1)(A) and § 3729(a)(1)(B) premised on express false certification.

Further, with regard to § 3729(a)(1)(G), the Complaint again includes sufficient factual averments indicating that defendants made false statements in order to avoid an obligation to refund overpayments made by the government as required by statute. *See* 42 U.S.C. § 1320a-7k. Accordingly, the Complaint states a plausible claim under § 3729(a)(1)(G).

C.    *Summary*

Based on the foregoing, the court concludes that the Complaint does not assert plausible claims for presentation of a false claim in violation of § 3729(a)(1)(A), making or using a false record or statement to cause a claim to be paid in violation of § 3729(a)(1)(B), or reverse fraud in

---

[7] Defendants argue that Wagner's allegations regarding "upcoding" "do not make any sense" because "'[u]pcoding . . . refers to 'a practice of billing Medicare for services or equipment designated under a code that is more expensive than what a patient actually needed or was provided.'" [Doc. #39 p. 14 (quoting *U.S. ex rel. Sharp v. E. Okla. Orthopedic Ctr.*, No. 05-CV-572-TCK-TLW, 2009 WL 499375 (N.D. Okla. Feb. 27, 2009)]. However, when construed in the context of the entirety of the Complaint, the court is not persuaded that the allegations as to "upcoding" are unclear. The Complaint explains its use of the term "upcoding," noting that Govind "manages ALL of the medical coding. Kumar Govind adds exacerbation (E) to all diagnoses except those that are new (N)." [Doc. #2, ¶ 86].

violation of § 3729(a)(1)(G) premised on allegations that defendants knowingly brought on, and retained, ineligible patients. Thus, Wagner's causes of action are dismissed to the extent that they are premised on allegations that defendants continued to provide services to patients who were not eligible for home health services under the Medicare guidelines, and billed Medicare for such unnecessary and/or ineligible services.

However, the court concludes that the Complaint's claims for presentation of a false claim in violation of § 3729(a)(1)(A), making or using a false record or statement to cause a claim to be paid in violation of § 3729(a)(1)(B), and reverse fraud in violation of § 3729(a)(1)(G), to the extent premised on allegations that defendants falsified OASIS information and medical records, [Doc. #2, ¶¶ 77-124], satisfy the pleading requirements of Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). Accordingly, defendant's motion to dismiss with regard to those claims is denied.

## V.     Motion to Amend

In opposition to the motion to dismiss, Wagner requests, alternatively, that the court give her permission to amend her Complaint. Local Civil Rule 7.2(*l*) provides that all motions to amend "shall be accompanied by a proposed order submitted pursuant to the Administrative Guide which specifically sets forth what is being amended." Wagner's request does not comply with LCvR 7.2(*l*), and is therefore denied. Wagner may file a motion for leave to amend that complies with LCvR 7.2(*l*) no later than Monday, December 18, 2017.

ENTERED this 11th day of December, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT