IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA, *ex rel.*
SANDRA WAGNER,

        Plaintiff,

v.

CARE PLUS HOME HEALTH CARE, INC.;
PRASAD ITTY; and
KUMAR GOVIND,

        Defendants.

Case No. 15-CV-260-GKF-JFJ

## OPINION AND ORDER

Before the court is the Motion for Leave to Amend Relator's Complaint [Doc. #58] of plaintiff United States of America *ex rel.* Sandra Wagner. For the reasons discussed below, the motion is granted in part and denied in part.

### I.     Factual Background

Defendant Care Plus Home Health Care, Inc. is a certified home health agency owned and operated by individual defendants Prasad Itty and Kumar Govind. Plaintiff Sandra Wagner was formerly employed by Care Plus, first as an independent contractor registered nurse from May 2006 to January 2013, and then as the Office Director of Nursing from January 2013 until her termination in February 2015.

While employed as the Office Director of Nursing, Wagner alleges that she "determined that Defendants' business practices were designed to fraudulently maximize billing, primarily to Medicare." [Doc. #60-1, ¶ 28]. Specifically, Wagner asserts that she witnessed two types of

fraudulent conduct by defendants: (1) continuing to provide services to patients who were not eligible for home health services under the Medicare guidelines, and billing Medicare for such unnecessary and/or ineligible services; and (2) falsifying required documentation and medical records to increase Medicare billings and avoid reimbursement of Medicare overpayments. Wagner estimates that defendants' alleged scheme has been ongoing since 2010, and resulted in losses to the United States in the amount of approximately $1,490,000 per year. [Doc. #60-1, ¶ 129].

Wagner initiated this *qui tam* action against defendants on behalf of the United States pursuant to False Claims Act, 31 U.S.C. §§ 3729 *et seq.*[1] The Complaint asserted three causes of action: (1) presentation of false claims in violation of 31 U.S.C. § 3729(a)(1)(A); (2) making or using a false record or statement to cause a false or fraudulent claim to be paid in violation of 31 U.S.C. § 3729(a)(1)(B); and (3) making or using a false record or statement to avoid an obligation to pay (refund) money to the government in violation of 31 U.S.C. § 3729(a)(1)(G). *See* [Doc. #2]. Defendants moved to dismiss count I pursuant to Fed. R. Civ. P. 12(b)(6) and all counts pursuant to Fed. R. Civ. P. 9(b). *See generally* [Doc. #39].

In an order of December 11, 2017, this court granted defendants' motion to dismiss as to Wagner's claims for presentation of a false claim in violation of § 3729(a)(1)(A), making or using a false record or statement to cause a claim to be paid in violation of § 3729(a)(1)(B), and reverse fraud in violation of § 3729(a)(1)(G) premised on allegations that defendants knowingly brought

---

[1] The False Claims Act permits a private person, called the "relator," to bring a civil action for alleged fraud on the U.S. government. 31 U.S.C. § 3730(b). *See also U.S. v. Eisenstein*, 556 U.S. 928, 932 (2009). In a *qui tam* action, the government may elect to intervene and proceed with the action within 60 days, but, if the government declines to take over the action, the relator shall have the right to conduct the action. 31 U.S.C. § 3730(b)(2) and 3730(b)(4)(B). On May 18, 2017, the government notified the court that it was not intervening at that time [Doc. #23], and, therefore, Wagner retains the right to conduct this litigation.

on, and retained, ineligible patients. *See* [Doc. #56]. However, the court denied defendants' motion to dismiss with regard to Wagner's claims for presentation of a false claim in violation of § 3729(a)(1)(A), making or using a false record or statement to cause a claim to be paid in violation of § 3729(a)(1)(B), and reverse fraud in violation of § 3729(a)(1)(G), to the extent premised on allegations that defendants falsified OASIS information and medical records. [*Id.*] Wagner seeks leave to amend the Complaint to provide additional supportive factual allegations as to the claims that were dismissed. *See* [Doc. #58].

## II.    Motion to Amend Standard

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading once as a matter of course within twenty-one (21) days of service or, if the pleading is one to which a responsive pleading is required, within 21 days of service of the responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "denial of a motion to amend may be appropriate where there has been shown 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Steadfast Ins. Co. v. Agric. Ins. Co.*, No. 05-CV-126-GKF-TLW, 2014 WL 1901175, at *4 (N.D. Okla. May 13, 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "'[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court.'" *Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006) (alteration in original) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).

3

**III. Overview of the False Claims Act**

"The FCA 'covers all fraudulent attempts to cause the government to pay out sums of money.'" *U.S. ex. rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quoting *United States ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1172 (10th Cir. 2007) (quotation omitted in original)). The relevant sections of the FCA are as follows:

(a) Liability for certain acts –

    (1) In general. – Subject to paragraph (2), any person who –

        (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

        (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

        \*\*\*

        (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

        is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1)(A), (B), (G) (internal footnote omitted).

    *A.*    *31 U.S.C. § 3729(a)(1)(A) Claims*

Section 3729(a)(1)(A) imposes liability on persons who knowingly present, or cause to be presented, a false or fraudulent claim for payment to the government. 31 U.S.C. § 3729(a)(1)(A). "In order to establish a violation of § 3729(a)(1), 'a plaintiff must show by a preponderance of the evidence that: (1) a false or fraudulent claim (2) is presented to the United States for payment or

4

approval (3) with knowledge that the claim is false or fraudulent.'" *U.S. ex rel. Troxler v. Warren Clinic, Inc.,* No. 11-CV-808-TCK-FHM, 2014 WL 5704884, at *2 (N.D. Okla. Nov. 5, 2014) (quoting *U.S. ex rel. Trim v. McKean*, 31 F. Supp. 2d 1308, 1315 (W.D. Okla. 1998)).

Two types of FCA claims exist—factually false claims and legally false claims. *See Conner,* 543 F.3d at 1217. "Factually false claims" generally require proof "the government payee has submitted 'an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'" *Id.* (quoting *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001)). "'Claims arising from legally false requests, on the other hand, generally require knowingly false certification of compliance with a regulation or contractual provision as a condition of payment.'" *U.S. ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1168 (10th Cir. 2016) (quoting *U.S. ex rel. Lemmon v. Envirocare of Utah*, *Inc.*, 614 F.3d 1163 (10th Cir. 2010)).

The Tenth Circuit has recognized two forms of legally false claims under section 3729(a)(1)(a)—express false certification and implied false certification. *Shaw v. AAA Eng'g & Drafting, Inc*., 213 F.3d 519, 531-32 (10th Cir. 2000). "Claims under an express-false-certification theory arise when a payee 'falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment.'" *Lemmon*, 614 F.3d at 1168 (quoting *Conner*, 543 F.3d at 1217). "The payee's 'certification' need not be a literal certification, but can be any false statement that relates to a claim." *Id. See also Conner*, 543 F.3d at 1217 (opining that certifications may be made through "invoices or other express means").

In contrast, an implied false certification claim does not require a false representation, but may result from a material omission—specifically, that the payee failed to comply with a material statutory, regulatory or contractual requirement. *See Universal Health Servs., Inc. v. U.S. ex rel.*

*Escobar*, 136 S. Ct. 1989, 1995 (2016). Under an implied false certification theory, "liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach if the omission renders those representations misleading." *Id.*

B. *31 U.S.C. § 3729(a)(1)(B) Claims*

Section 3729(a)(1)(B) prohibits the use of a false record or statement in order to demonstrate to the government that a false or fraudulent claim should be paid. 31 U.S.C. § 3729(a)(1)(B); *Troxler*, 2014 WL 5704884, at *2. Liability under section 3729(a)(1)(B) requires proof of the following: "'(1) a false record or statement (2) is used to cause the United States to pay or approve a fraudulent claim (3) with the defendant's knowledge of the falsity of the record or statement.'" *Troxler*, 2014 WL 5704884, at *2 (quoting *Trim*, 31 F. Supp. 2d at 1315). In contrast to 31 U.S.C. § 3729(a)(1)(A), only factually false claims and express false certification clams are actionable under 31 U.S.C. § 3729(a)(1)(B). *See Shaw*, 213 F.3d at 531-32.[2] Due to the false record or statement requirement, an implied false certification claim does not exist under 31 U.S.C. § 3729(a)(1)(B). *Id. See also Lemmon*, 614 F.3d at 1168.

C. *31 U.S.C. § 3729(a)(1)(G) Claims*

Section 3729(a)(1)(G) is commonly referred to as the "reverse false claims" provision, and prohibits "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or

---

[2] Both *Lemmon* and *Shaw* analyzed § 3729(a)(2), which was renumbered to § 3729(a)(1)(B) by passage of the Fraud Enforcement and Recovery Act of 2009, Pub.L. No. 111-21, § 4, 123 Stat. 1616 (2009).

transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G); *U.S. ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1194 (10th Cir. 2006). "A reverse false claim is documentation resulting in an underpayment to the Government, as opposed to a false claim, generally referring to an inflated or false bill for payment from the Government." *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1041 n.2 (10th Cir. 2004). Section 3729(a)(1)(G) "was added 'to provide that an individual who makes a material misrepresentation to avoid paying money owed the Government would be equally liable under the Act as if he had submitted a false claim to receive money.'" *Bahrani*, 465 F.3d at 1194 (quoting S. Rep. No. 99-345, at 18, U.S.C.C.A.N. at 5283).

"To prove a 'reverse false claim' under FCA section 3729(a)(1)(G) a relator must show that: (1) the defendant knowingly made a materially false record or statement; (2) to improperly avoid or decrease an obligation to pay or transmit money or property to the government." *U.S. ex rel. Duffy v. Lawrence Mem'l Hosp.*, No. 14-2256-SAC-TJJ, 2017 WL 2905406, at *5 (D. Kan. July 7, 2017). *See also Little v. ENI Petroleum Co., Inc.*, No. CIV-06-120-M, 2009 WL 2424215, at *2 (W.D. Okla. July 31, 2009) ("[I]n order to establish defendants' liability for the alleged reverse false claims, [relator] must show that (1) defendants made or used statements in order to avoid or decrease their obligation to pay money to the government; (2) the statements were false or fraudulent; and (3) defendants knew the statements were false or fraudulent.").

### III. Analysis of Proposed Amended Complaint

Wagner's proposed Amended Complaint asserts three causes of action premised on allegations that defendants knowingly continued to provide services to patients who were not eligible for home health services under the Medicare guidelines, and billing Medicare for such unnecessary and/or ineligible services: (1) presentation of false claims in violation of 31 U.S.C. § 3729(a)(1)(A); (2) making or using a false record or statement to cause a false or fraudulent claim

7

to be paid in violation of 31 U.S.C. § 3729(a)(1)(B); and (3) making or using a false record or statement to avoid an obligation to pay (refund) money to the government in violation of 31 U.S.C. § 3729(a)(1)(G). *See* [Doc. #60-1]. Defendants argue that Wagner's motion to amend should be denied because Wagner fails to provide sufficient additional facts to support her claim as required by Fed. R. Civ. P. 9(b) and therefore Wagner fails to cure previously identified deficiencies.[3]

With respect to allegations based on implied false certification theory, the court will consider only if the allegations state a plausible claim under 31 U.S.C. § 3729(a)(1)(A). However, the court will analyze whether the allegations based on express false certification theory state a plausible claim under § 3729(a)(1)(A), § 3729(a)(1)(B), or § 3729(a)(1)(G).

  A.  *31 U.S.C. § 3729(a)(1)(A) Claims*

This court previously dismissed the Complaint's implied false certification claim for failure to satisfy the pleading requirements of Fed. R. Civ. P. 9(b). Wagner's Amended Complaint provides seven (7) exemplar sample patients as cases wherein defendants billed ineligible Medicare patients for home health benefits.[4] The Amended Complaint includes new allegations

---

[3] Additionally, defendants argue that Wagner's motion to amend does not provide the level of specificity required by LCvR 7.2(*l*). However, Wagner attached her proposed Amended Complaint to her reply and therefore defendants' LCvR 7.2(*l*) argument is moot. *See* [Doc. #60; 60-1].

[4] The Amended Complaint includes a total of fifteen (15) exemplar patients and, unlike Wagner's original Complaint, does not distinguish between exemplar patients related to the alleged provision of home health services to ineligible Medicare patients and those exemplar patients for allegations that defendants falsified documentation and medical records to increase Medicare billings and avoid reimbursements of Medicare overpayments. However, the Amended Complaint includes no additional allegations related to the eight (8) exemplar patients previously identified as examples of defendants' falsifying OASIS information and medical records from the original Complaint. Based on this court's review, the eight exemplar patients previously identified as supporting allegations of falsifying documents and medical records do not include any new allegations that defendants provided home health services to ineligible Medicare patients and the court will not consider the remaining eight exemplar patients for purposes of Wagner's Motion to Amend. *See* [Doc. #60-1]. Nor does the court consider Wagner's claims premised on defendants' falsification of OASIS information and medical records unrelated to the retention of ineligible patients.

directed to the alleged false claims. Thus, the court will consider whether the new allegations demonstrate the "specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *Lemmon*, 614 F.3d at 1172. This requires allegations sufficient to "'set forth the 'who, what, when, where and how' of the alleged fraud.'" *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). *See also* [Doc. #56, at pp. 3-7 (this court's discussion of Fed. R. Civ. P. 9(b)'s pleading requirements specific to the False Claims Act in the Tenth Circuit)].

With regard to "who," the Amended Complaint includes seven specific patient examples. For five of the seven exemplar patients, Wagner attaches a Form CMS-485, which identifies the certifying nurse.[5] *See* [Doc. #60-1, 61-2, 61-3, 61-5, 61-6]. Additionally, for three of the seven, Wagner identifies other health care providers involved in the patients' care. *See* [Doc. #60-1, ¶¶ 63-64, 70, 78-79].

As for "when," the Amended Complaint includes new allegations as to the periods when home health services were provided to ineligible patients. Specifically, the Amended Complaint alleges that Medicare patient ID no. 440403341B6 was recertified as requiring home health care for the periods from September 9, 2013 to November 7, 2013 and June 11, 2014 to August 9, 2014; Medicare patient ID no. 447188496D was recertified for the period from September 9, 2013 to November 7, 2013; Medicare patient ID no. H42195960 was recertified for the period from July 29, 2014 to September 29, 2014; Medicare patient ID no. H55489859 was recertified for the period from September 20, 2013 to November 18, 2013; and Medicare patient ID no. 445786225A was

---

[5] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

9

recertified for the period from October 1, 2013 to November 29, 2013. *See* [Doc. #60-1, ¶¶ 48, 56, 65, 76, 82]. Additionally, unlike the original Complaint, the Amended Complaint includes sufficient allegations from which the court may infer that the allegations relate to conduct occurring prior to November of 2014. [*Id.* ¶¶ 51, 59, 67, 78, 81]. Thus, the Amended Complaint includes sufficient allegations from which the court may infer that the claims arose during the period from September 9, 2013 to November 1, 2014. Further, with regard to "where," the Amended Complaint alleges that Wagner worked for Care Plus—and therefore the misconduct occurred—in Tulsa, Oklahoma. [*Id.* ¶¶ 14-15].

Concerning "how" and "what," the Amended Complaint includes new allegations of the services actually provided to the exemplar patients. For example, first, with regard to Medicare patient ID no. 440403341B6, the Amended Complaint alleges that home health care providers took a monthly blood draw and instructed the patient on medication for chronic conditions, although the instruction was not warranted by any change in condition. [*Id.* ¶¶ 45, 49]. Additionally, the Amended Complaint includes new allegations from which the court may infer that the same patient did not qualify for home health services, including assertions that the patient had the ability to ambulate and independently left her home for trips that "were neither infrequent nor short in duration" to shop or dine out. [*Id.*, ¶ 47]. Second, as to Medicare patient no. H55489859, the Amended Complaint attaches Form CMS-485 for the period from September 20, 2013 to November 18, 2013, signed by Tamara Bailey, and includes new allegations that the patient ambulated independently. [*Id.*, ¶¶ 75-76; Doc. #61-5]. The Amended Complaint alleges that the assertions in the Form CMS-485 were inconsistent with homebound status, but that defendants nevertheless billed Medicare for physical therapy services as home health care services. *See* [Doc. #60-1, ¶ 77]. Third, with regard to Medicare patient ID no. 445786225A, the Amended Complaint

includes new allegations that defendants provided weekly skilled nursing services for education on chronic conditions and medications, and that Tamara Bailey recertified the patient as eligible for home health services during the relevant period. [*Id.*, ¶¶ 82-83; Doc. #61-6].

Additionally, the Amended Complaint includes new allegations regarding those patients for which the original Complaint previously documented the services actually provided. *See* [Doc. #56, pp. 14-15]. With regard to Medicare patient ID no. 447188496D, the Amended Complaint attaches documents identifying nurse Tamara N. Bailey as the executor of the patient's Form CMS-485 recertification form. *See* [Doc. #61-2]. As to the same patient, the Amended Complaint includes new allegations, based on a medical diagnosis of unspecified anemia, that the patient did not qualify for the home health care received. *See* [Doc. #60-1, ¶ 55]. The Amended Complaint has also added allegations as to Medicare patient ID no. H42195960, including assertions that the patient's care was provided twice weekly for the first week of service and once weekly for the remaining known four months of service; that the patient was not incapable of pre-filling his medication planners (the identified service provided); that the Form CMS-485 was completed by Tamara Bailey; and that the OASIS-C recertification included Wagner, Pamela Carp, and Sara Repschlaeger. *See* [Doc. #60-1, ¶¶ 60-61 and 64-65; Doc. #61-3]. Finally, as for Medicare patient ID no. 448409217A, the Amended Complaint attaches documents indicating Lorena Barboza provided various services. *See* [Doc. #61-4].

Finally, the Amended Complaint includes new allegations specifically asserting that defendants billed Medicare for the home health services provided during the relevant time period. *See* [Doc. #60-1, ¶¶ 50, 55, 66, 83-84]. Wagner's allegations are based on personal knowledge in her position as Office Director of Nursing. [*Id.*, ¶¶ 26-27, 42]. These allegations, taken with the personal knowledge of defendants' billing practices gained through Wagner's position as Office

Director of Nursing, permit the inference that false claims were, in fact, submitted to the government for payment. *See United States ex rel. Myers v. America's Disabled Homebound, Inc.,* No. 14-C-8525, 2018 WL 1427171, at *4-5 (N.D. Ill. Mar. 22, 2018). With respect to four of the seven exemplar patients, the Amended Complaint alleges that defendants knew of patients' ineligibility when the claims were submitted. *See* [Doc. #60-1, ¶¶ 42-43, 57, 66, 77].

Based on these new allegations, the court is persuaded that the Amended Complaint cures previously identified deficiencies, and provides sufficient factual allegations of a violation of 31 U.S.C. § 3729(a)(1)(A) to satisfy Rule 9(b) and permit a reasonable inference that false claims were submitted as part of defendants' fraudulent scheme.

Further, although not raised by defendants in response to Wagner's motion to amend, defendants previously argued that Wagner's claims premised on retention of ineligible patients could not state a plausible claim pursuant to Fed. R. Civ. P. 12(b)(6) because whether a patient is eligible for Medicare home health benefits is a determination made by the patient's physician, not the home health care provider. However, defendants' argument is contrary to the plain language of the Code of Federal Regulations.

> Home-health agency's patients are referred for home-health services by their physicians who are required to certify that the patient is under their care, that the physician has established and will periodically review a 60-day plan of care, that the patient is homebound, and that the patient requires one of the types of home-health services that qualifies for Medicare. After receiving a patient referral, a home-health agency is required to provide its own patient-specific, comprehensive assessment, called an Outcome and Assessment Information Set ("OASIS"). 42 C.F.R. § 484.55. During this initial assessment, the home-health agency must determine the immediate care and support needs of the patient, and, for Medicare patients, **determine eligibility for the Medicare home health benefit, including homebound status**. *Id.*
>
> A 60-day plan of care is called an "episode." After each episode, a patient must be recertified to receive funds from Medicare. To be recertified, the patient's physician must review and sign the patient's plan of care, making any necessary changes, **and the home-health agency must complete a new assessment, and**

> **determine that the patient is still eligible to receive Medicare-funded home-health services.**

*United States ex rel. White v. Gentiva Health Servs., Inc.,* No. 10-CV-394-PLR-CCS, 2014 WL 2893223, at *2 (E.D. Tenn. June 25, 2014) (emphasis added); *see also Myers*, 2018 WL 1427171, at *6 ("Whether a patient is homebound is not a matter of opinion. Rather, it is a matter of fact determined according to the regulatory standard."); 42 U.S.C. § 484.55(b). Thus, amendment would not be futile as the Amended Complaint states a plausible claim for violation of 31 U.S.C. § 3729(a)(1)(A) during the period from September 9, 2013 to November 1, 2014 premised on retention of ineligible patients.

      B.      *31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B) Express False Certification Claims*

"To prove a false claim under subsections (A) or (B), a relator must show that defendant: (1) made a claim; (2) to the government; (3) that is materially false or fraudulent; (4) knowing of its falsity; and (5) seeking payment from the federal government." *United States ex rel. Duffy v. Lawrence Mem'l Hosp.*, No. 14-2256-SAC-TJJ, 2017 WL 2905406, at *5 (D. Kan. July 7, 2017). Thus, an express false certification claim requires an averment of a false or fraudulent statement related to a claim for payment to the government. *See Lemmon,* 614 F.3d at 1168; *Little v. ENI Petroleum Co., Inc.*, No. CIV-06-120-M, 2009 WL 2424215, at *2 (W.D. Okla. July 31, 2009).

This court previously dismissed the Complaint's express certification claims for failure to identify with specificity the predicate false statements. *See* [Doc. #56, pp. 15-17]. However, the Amended Complaint includes new factual allegations regarding the allegedly false statements. Specifically, the Amended Complaint includes allegations from which the court may infer that a Form CMS-485 completed regarding Medicare patient ID nos. 440403341B6, 447188496D, H42195960, H55489859, 441244106A, and 445786225A falsely represented that the patients required maximum assistance and taxing effort to leave the home, and the inability to leave the

home unassisted.[6] *See* [Doc. #60-1, ¶¶ 46-48, 54, 65, 75-76, 78-80, and 81-82]. Further, the Amended Complaint attaches the Forms CMS-485, which document the person who authored the false statement, the date of the false statement, and the means used. *See* [Doc. #61-1, 61-3, 61-5, 61-6]. The Amended Complaint includes allegations from which the court may infer that defendants knowingly falsified the documents in order to seek payment from the government. *See* [Doc. #60-1, ¶¶ 50, 57-58, 66, 76-77, 80, 82-84]. Taking these allegations as true, Wagner has provided sufficient information to cure previously identified deficiencies, and satisfied the requirements of Fed. R. Civ. P. 9(b). Thus, Wagner's motion to amend is granted with respect to the FCA express false certification claims premised on allegations that defendants knowingly retained and provided Medicare services to ineligible patients in violation of §§ 3729(a)(1)(A) and 3729(a)(1)(B) for the period from September 9, 2013 to November 1, 2014.

C. *§ 3729(a)(1)(G) Express False Certification Claims*

Analyzing whether Wagner's factual allegations that ineligible patients were brought, and retained, on defendants' home health care service, the court concludes that the allegations are insufficient to state a plausible FCA claim under § 3729(a)(1)(G).

---

[6] The Amended Complaint includes one patient example—Medicare patient ID no. 440403341B6—relative to which Wagner alleges that a doctor certified the patient as being homebound. *See* [Doc. #60-1, ¶¶ 42-44]. However, the Amended Complaint also includes allegations that Prasad Itty knew the patient did not qualify for home health services but engaged in "doctor shopping" in order to continue to bill Medicare for home health services, including services during a period when the patient was not certified as homebound. [*Id*., ¶ 44]. Thus, Wagner's claims are not undercut by allegations of the physician's certification. Further, unlike the original Complaint, the Amended Complaint includes allegations that the exemplar patients left their homes for reasons other than medical treatment, such as to shop or dine out. [*Id.,* ¶¶ 47, 54, 70, 78, 81]. At the motion to dismiss stage, the court is bound to accept these allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As previously stated, "[t]o prove a 'reverse false claim' under FCA section 3729(a)(1)(G) a relator must show that: (1) the defendant knowingly made a materially false record or statement; (2) to improperly avoid or decrease an obligation to pay or transmit money or property to the government." *Duffy*, 2017 WL 2905406, at *5. The Amended Complaint alleges "[t]he false certifications, CMS forms, medical records, and other representations made or caused to be made by Defendants – which were material to an obligation to pay or transmit money to the Government, knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government." [Doc. #60-1, ¶ 192]. This formulaic recitation that defendants made false certifications knowingly to conceal or avoid an obligation to pay or transmit money or property to the government does not satisfy the *Twombly* standard, much less Rule 9(b). *See Twombly*, 550 U.S. at 555.

Nor does the Amended Complaint provide sufficient factual support. The Amended Complaint includes no factual allegations that defendants owed a specific financial obligation to the government with regard to any of the seven exemplar patients. Further, there are no allegations that any of the alleged false statements or records were used to decrease a financial obligation with respect to the seven patients. Finally, the Amended Complaint includes no allegations that defendants received an additional documentation request from Medicare for any of the seven patients. Thus, the Amended Complaint includes insufficient factual allegations of a reverse false claim premised on the retention of ineligible patients to satisfy the pleading requirements of Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b), and therefore does not cure deficiencies previously identified by this court. Accordingly, Wagner's request for leave to amend to assert a reverse false certification claim premised on retention of ineligible patients is denied.

**IV.    Conclusion**

Based on the foregoing, plaintiff United States of America *ex rel.* Sandra Wagner's Motion for Leave to Amend Relator's Complaint [Doc. #58] is granted in part and denied in part. Wagner may amend her Complaint to assert claims under §§ 3729(a)(1)(A) and 3729(a)(1)(B) for retention of ineligible patients for the period from September 9, 2013 to November 1, 2014. However, Wagner's request for leave to amend to assert a claim under § 3729(a)(1)(G) premised on retention of ineligible patients is denied. Wagner shall file her Amended Complaint consistent with this court's Order no later than May 21, 2018.

ENTERED this 14th day of May, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE